UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE<br><br>CHARLES A. GROGAN and<br>SARAH A. GROGAN, dba<br>Silver Bells Tree Farm,<br><br>                Debtors | Bankruptcy Case<br>No. 11-65409-tmr11 |
| CHARLES A. GROGAN and<br>SARAH A. GROGAN, dba<br>Silver Bells Tree Farm,<br><br>                Plaintiffs,<br><br>        v.<br><br>HARVEST CAPITAL COMPANY, an Oregon<br>Corporation and<br>DEMETER AG, LLC, an Oregon<br>Limited Liability Company,<br><br>                Defendants. | Adversary Proceeding<br>No. 11-6276-tmr<br><br><br><br><br>MEMORANDUM OPINION |

On October 31, 2011, Plaintiffs Charles and Sarah Grogan (**Plaintiffs**) filed a voluntary Chapter 11 petition. On December 15, 2011, they filed the instant adversary proceeding. Their second amended complaint filed April 3, 2012 (the "**Complaint**") contains two claims. The first is for a declaration that Defendants Harvest Capital Company (**Harvest**) and Demeter Ag, LLC (**Demeter**) do not have liens consisting of valid perfected security interests in Plaintiffs' Christmas trees and other crops or their proceeds;

MEMORANDUM OPINION-1

alternatively, assuming such [liens] exist, the second claim seeks to avoid the liens under 11 U.S.C. § 544.[1] The Complaint also seeks an award of attorney's fees and costs. Defendants have counterclaimed for their own attorney's fees and costs. Harvest also filed a third party action against Plaintiffs' counsel. By stipulated order entered on February 15, 2012, that third party claim has been bifurcated from the original claims and counterclaims, and abated pending judgment on those claims.

Before the Court are cross motions for summary judgment. The motions have been briefed and argued, and are ripe for decision. The Court has reviewed and considered the motions, along with all documents filed in support of or in opposition to the motions, the pleadings, applicable legal authorities, and other submissions in the file. The parties have stipulated that the Court has jurisdiction to decide the adversary proceeding under 28 USC §§ 157 and 1334, United States District Court Local Rule 2100.1 and Federal Rule of Bankruptcy Procedure ("FRBP") 7001. The parties have also affirmatively agreed that this is a core proceeding under 28 USC § 157(b)(2)(K) and that the Court has appropriate Constitutional authority to rule on this matter.

**Facts**:

Plaintiffs own and operate, as a sole proprietorship, Silver Bells Tree Farm, located in Marion County, Oregon, where they plant and grow Christmas trees. Silver Bells Tree Farms consists of numerous parcels of real property, some owned and some leased by Plaintiffs. Within twelve years of being planted, generally, the Christmas trees are harvested for sale. As set forth below, at various times Plaintiffs took out secured loans with Harvest and Demeter. Demeter also took an assignment of a secured loan. The particulars of the security interests given for those loans are referenced in the "Discussion" section.

Harvest Loans:

In September 2006, Plaintiffs borrowed $7,000,000 from Harvest as evidenced by two (2) promissory notes -- one for $5,500,000 (**Note A**), the other for $1,500,000 (**Note B**). Note A and Note B are secured by a combined mortgage/security agreement (**the Harvest Security Agreement**), which was duly recorded in

---

[1] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-2

the real property records of Marion County. In addition, on September 20, 2006, and September 2, 2009, respectively, Harvest filed an original and amended Uniform Commercial Code (**UCC**) financing statement with the Oregon Secretary of State (**the Harvest Financing Statements**). The Harvest Financing Statements were timely continued by a continuation statement filed on August 4, 2011.

Demeter Loans:

Direct Loan:

In March 2008, Plaintiffs borrowed $225,000 from Demeter evidenced by a promissory note, secured by a combined mortgage, assignment of rents and security agreement and fixture filing. In February 2010, the original note was replaced by a $400,000 note (**the Demeter Note**). The original mortgage/security agreement was also replaced by an amended and restated agreement (**the Demeter Security Agreement**). The Demeter Security Agreement was duly recorded in the Marion County real property records on February 19, 2010. In addition, Demeter filed a UCC financing statement with the Oregon Secretary of State on March 18, 2008 (**the Demeter Financing Statement**).

Assigned Loan:

In September 2008, Plaintiffs borrowed $500,000 from Heinze Investments, LLC (**Heinze**) by executing a promissory note (**the Heinze Note**). The Heinze Note was secured by two combined mortgage/security agreements which were recorded in the Marion County real property records on September 25, 2008. One of the mortgages created a lien on two parcels of real property identified as "Canyon Barn" and "North Livingston" (**the Livingston Mortgage**). The Canyon Barn parcel was later released from the mortgage, leaving the Livingston parcel as the only security thereunder. At no relevant time did the Livingston parcel contain Christmas trees. The other mortgage granted a lien on nine (9) separate tracts of real property, which comprised the whole of Plaintiffs' farm (**the Blanket Mortgage**).

In September 2008, and September 2009, respectively, Heinze filed with the Oregon Secretary of State an original and amended UCC financing statement for the personal property described in both mortgages (**the Heinze Financing Statements**). In February 2011, Heinze assigned its interest in the Heinze Note, both mortgages and the Heinze Financing Statements to Demeter.

MEMORANDUM OPINION-3

**Summary Judgment Standards**:

On a motion for summary judgment, the moving party has the burden to show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Federal Rule of Civil Procedure (FRCP) 56(a) (made applicable by FRBP 7056). Material facts are such facts as may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).

All reasonable doubts as to the existence of genuine disputes as to material facts should be resolved against the moving party, Crosswhite v. Jumpking, Inc., 411 F. Supp. 2d 1228, 1230 (D. Or. 2006), and all rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir.1987).

The parties all confirm that the Court can resolve the issues by looking to the referenced documents and that no factual dispute exists.

**Discussion**:

Defendants argue their security agreements and financing statements are sufficient to render their rights in the Christmas trees superior to Plaintiffs' under Oregon's version of the Uniform Commercial Code (UCC). Alternatively Defendants argue their interests are superior based on certain recorded mortgages.[2] The Court will address the alternative argument first.

<u>Defendants' Rights in Christmas trees as real property</u>:

// // //

// // //

// // //

---

[2]In this regard, Demeter adopted Harvest's arguments.

MEMORANDUM OPINION-4

For purposes of its analysis, the Court will assume for argument's sake that the "mortgage" portions of the Harvest and Demeter Security Agreements[3] also cover growing crops thereon, including the Christmas trees. Put another way, the Court assumes Oregon law would consider the Christmas trees part of the real property given as security. See, e.g., Jones v. Adams, 37 Or. 473, 476, 59 P. 811, 811 (1900) (recognizing that unless the crops belong to a tenant, "[a] real-estate mortgage [given by the landowner] is not only a lien upon the land, but also upon the annual crops growing thereon"); Falk v. Amsberry, 53 Or. App. 735, 739, 633 P.2d 799, 802 (1981) (recognizing that depending on the relationship of the parties to each other, in some situations growing crops may be considered real property while in others they are considered personalty). The issue is whether perfected real estate liens in the Christmas trees trump a bankruptcy trustee's strong-arm powers.

A Chapter 11 debtor in possession has the rights and powers of a trustee. § 1107(a). Section 544(a)(1) gives a trustee, as of the commencement of the case, the rights and powers, including the power to avoid transfers, of a creditor that extends credit and obtains as of the commencement of the case, "a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien." (emphasis added). No such creditor need actually exist. Id. Further, actual notice of a competing interest will not defeat the trustee's rights. Id. A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36) (emphasis added).[4] While bankruptcy law gives the trustee the rights and powers of a hypothetical judicial lien creditor, those rights and powers are usually determined under state law. Bullock v. Roost (In re Gold Key Properties, Inc.), 119 B.R. 787, 789 (Bankr. D. Or. 1990).

Under Oregon law, entry of a judgment creates a lien on all of the judgment debtor's real property located in the county in which the judgment is entered. ORS 18.150(2). However, the judgment's entry does

---

[3]At oral argument, Demeter conceded it was not claiming the Christmas trees as collateral based on either the Livingston or Blanket Mortgages.

[4]In turn a "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37).

MEMORANDUM OPINION-5

not create a lien on personal property in the judgment debtor's possession. Such a lien is only created when the sheriff, pursuant to a writ of execution obtained by the judgment creditor, actually levies on the personal property, as a predicate to the property's sale to satisfy the judgment. See U.S. v. $319,603.42 in U.S. Currency, 829 F. Supp. 1223, 1225 (1992) (construing ORS 23.410, Oregon's predecessor "lien by levy" statute). ORS 18.878(1) provides the methods by which a sheriff may levy on both real and personal property. As to tangible personal property, the sheriff may seize it, ORS 18.878(1)(b), secure and deliver it, if instructed to do so, ORS 18.878(1)(e), or attach a notice to it, essentially telling persons not to move or damage it pending sale. ORS 18.878(1)(c); ORS 18.880. Under ORS 18.878(2), "[w]hen a sheriff levies on personal property in any manner described in subsection (1) . . ., the interest of the judgment creditor in the personal property is the same as that of a secured creditor with an interest in the property perfected under ORS chapter 79." (emphasis added).

Defendants argue that growing crops are not "personal property" within the ambit of ORS 18.878(2). The Court disagrees. While ORS Chapter 18 does not define the term "personal property," ORS 18.878(2) specifically cross references perfected interests under ORS chapter 79 (UCC Article 9). There, Christmas trees are personal property. In particular, as the parties concede, they are "crops," Rainier Nat'l Bank v. Security State Bank, 59 Wash App. 161, 164, 796 P.2d 443, 445 (1990), which are "goods," ORS 79.0102(1)(qq)(A), (B)(iv), and more particularly on the facts at bar, "farm products." ORS 79.0102(1)(hh)(A), (ii).

Defendants further argue the trees are not solely personal property as between Plaintiffs and Defendants in that they have a dual nature; that is, they are viewed under Oregon law as also being real property. Again assuming arguendo that statement is true, it nevertheless examines the wrong relationship. The relationship to be examined is whether as between Plaintiffs wearing their hat as hypothetical "lien by levy" holders and Plaintiffs wearing their hat as judgment debtors, the trees are personal property. As discussed above, they are. Further even assuming the Court were to look at Plaintiffs' relationship with Defendants, ORS 18.878(2) does not require that the property levied upon be "solely" personal property, only that it be personal property.

MEMORANDUM OPINION-6

Defendants also argue that a sheriff would or could never levy on growing crops as personal property (i.e. apart from the land) under ORS 18.878(1), and thus the first condition of ORS 18.878(2) which assumes a levy is possible, can never be satisfied. Again, the Court disagrees. Under ORS 18.345(1), unless exempt, "[a]ll [personal] property . . . of the judgment debtor, shall be liable to an execution." If the law contemplates that "all" personal property shall be liable to an execution, then it must provide a means of doing so. When confronted with a writ of execution to levy on a crop, the sheriff would have the option of tagging the crop or seizing (harvesting) it. In fact, in Keel v. Levy, 19 Or. 450, 24 P. 253 (1890), the sheriff did exactly that; he harvested the crop. Other Oregon cases also make clear that a growing crop, in and of itself, may be levied upon. See, e.g., Brown v. Jones et. al., 130 Or. 424, 432, 278 P. 981, 983 (1929).

Because, under §§ 544(a)(1) and 101(36), a trustee is armed with a lien obtained by amongst other things "levy," by virtue of ORS 18.878(2), a trustee is deemed to have a perfected Article 9 security interest in the crops. As to priorities, when a perfected real estate lien in crops clashes with a UCC lien, "[a] perfected security interest in crops growing on real property has priority over a conflicting interest <u>of an encumbrancer</u> or owner of the real property if the debtor has an interest of record in or is in possession of the real property." ORS 79.0334(9) [UCC 9-334(i)] (emphasis added).[5] Official Comment 12 to UCC 9-334 explains:

> Growing crops are "goods" in which a security interest may be created and perfected under this Article. In some jurisdictions, a mortgage of real property may cover crops, as well. In the event that crops are encumbered by both a mortgage and an Article 9 security interest, subsection (i) provides that the security interest has priority.[6]

Thus under ORS 79.0334(9), Plaintiffs' rights as a party holding a perfected Article 9 security interest (by virtue of ORS 18.878(2)) trump any rights Defendants may assert in the Christmas trees (crops)

---

[5]There is no dispute Plaintiffs are in possession of and/or have a recorded interest in the land upon which the Christmas trees are growing.

[6]While lacking the force of law, the Official Comments nonetheless are instructive in interpreting Oregon's Commercial Code. Belmont International, Inc. v. American International Shoe Co., 313 Or. 112, 119, n.8, 831 P.2d 15, 19 (1992)(internal quotation and citation omitted).

MEMORANDUM OPINION-7

by virtue of their mortgages on the land. Nevertheless Defendants cite ORS 72.1070 (UCC 2-107) to argue the contrary. That section concerns "sales of" (not security interests in) "goods" that will eventually be severed from realty.[7] Under ORS 72.1070(2) identifiable growing crops may be separately contracted to be sold apart from the land, no matter who is responsible for severing them, even if the crops are considered realty at the time of contracting. Subsection 3 to ORS 72.1070 goes on to provide:

> The <u>provisions of this section</u> are subject to any third party rights provided by the law relating to realty records, and the contract for sale may be executed and recorded as a document transferring an interest in land and shall then constitute notice to third parties of the buyer's rights under the contract for sale.

ORS 72.1070(3) (emphasis added). Defendants seem to argue this language by implication negates ORS 79.0334(9) and throws priority issues back to real estate law. That is not the case. Subsection 3 is limited to the "provisions of this section," which again relate to sales not security interests. Further, Official Comment 3 to UCC 2-107 makes clear that "[t]he security phases of things attached to or to become attached to realty are dealt with in the Article on Secured Transactions (Article 9) . . . ." Subsection 3's purpose is explained in Anderson's treatise:

> Prior to severance, the local recording statutes may make it possible for third persons to acquire rights superior to the buyer.
>
> Without regard to whether things to be removed from realty constitute goods within Article 2, third parties may have superior rights in the goods because of their rights in the land and in things attached to the land arising by virtue of these recording statutes.
>
> To guard against and prevent third parties from acquiring rights in the things to be severed, the parties to a sale of the property that is attached or to be severed may treat the transaction as one involving land for the purpose of recording. That is, they may execute the contract in the same manner as would be required of a contract for the sale of land, whereupon they may record the contract and, thereby, give notice to all of the buyer's rights thereunder.

2 Anderson U.C.C. § 2-107:11, 12 (3d. ed.). <u>See</u> <u>also</u> <u>Robison v. Gerber Products Co.</u>, 765 F.2d 431, 433 (4th Cir. 1985). Protecting against third parties does not somehow transform purchased goods into realty.

---

[7]Under ORS 72.1050(1) "growing crops" for sales purposes, are, as they are for security purposes, "goods."

MEMORANDUM OPINION-8

Finally, much is made as to whether the Christmas trees have been "constructively severed."

> 'Constructive' severance implies a situation in which an item of property is deemed by the law to have been severed from the land, even though it has not been severed as a matter of physical fact. But all that this so-called 'severance' signifies is the thing in question is thereafter to be regarded in law as personal property.

Pepin v. City of N. Bend, 198 F. Supp. 644, 649 (D. Or. 1961). Defendants argue such severance is necessary to convert the trees into personalty. Plaintiffs argue that even if constructive severance was required, it occurred upon the bankruptcy filing based upon the hypothetical levy. Oregon courts however have recognized that when a statutory scheme covers the subject matter, that scheme rather than the constructive severance doctrine should be applied. Paullus v. Yarbrough, 219 Or. 611, 622-23, 347 P.2d 620, 626 (1959) (applying the then-in-effect Uniform Sales Act to determine whether timber was included in the definition of "goods" therein). As discussed above, ORS 18.878(2) specifically references Article 9, under which growing crops are personalty whether constructively severed or not. Accord Hawkins v. City of La Grande, 315 Or. 57, 70, 843 P.2d 400, 408 (1992) (applying statutory definition of growing crops as "goods" under UCC sales provisions, in context of constitutional "takings" clause). Thus the constructive severance doctrine is inapplicable.

In sum, the Bankruptcy Code gives Plaintiffs the rights and powers of a creditor with a "lien by levy" on personal property. Under Oregon law, growing crops are personal property and the sheriff under a writ of execution is able to levy thereon. Further, under Oregon law, a creditor with a "lien by levy" is deemed to have all the rights of a creditor with a perfected Article 9 security interest. Under Oregon's Article 9, a creditor with a perfected security interest in crops has priority over a perfected real estate lien covering crops. As such, Defendants' alternative theory of priority fails.

Defendants' Rights in Christmas trees as personal property:

The motions raise two issues with regard to Defendants' rights in the Christmas trees as personal property. The first is whether they have an enforceable security interest in the trees. In particular, Plaintiffs challenge the sufficiency of the collateral description in the various pertinent documents. If in fact Defendants have such an interest, the second issue is whether it has been perfected.

MEMORANDUM OPINION-9

Relevant Law:

Sufficiency of collateral descriptions in security agreements:

The parties concede Oregon law applies. ORS 79.0203(2)(c)(A) [UCC 9-203(b)(3)(A)] provides in pertinent part, "a security interest is enforceable against the debtor and third parties with respect to the collateral only if . . . [t]he debtor has authenticated a security agreement that provides <u>a description of the collateral</u> . . . ." (emphasis added). The requirement of a writing in ORS 79.0203(2)(c)(A) is in the nature of a statute of frauds. Official Comment 3 to UCC 9-203. ORS 79.0108(1) [UCC 9-108(a)] provides (with exceptions not relevant here), that "a description of personal or real property is sufficient, whether or not it is specific, if it <u>reasonably</u> <u>identifies</u> what is described." (emphasis added). In turn, ORS 79.0108(2) [UCC 9-108(b)] sets out what constitutes "reasonable identification." Among other methods of identification, the collateral description meets the standard by a "[s]pecific listing," ORS 79.0108(2)(a), as well as (with exceptions not relevant here), by "any other method, if the identity of the collateral is objectively determinable." ORS 79.0108(2)(f) [UCC 9-108(b)(6)].

Oregon courts have rejected a "reasonable identification" test that requires exactitude and excessive detail. <u>Community Bank v. Jones</u>, 278 Or. 647, 664, 566 P.2d 470, 481 (1977). <u>See</u> also Official Comment 2 to UCC 9-108 ("This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called 'serial number' test)." In construing ORS 79.0108's predecessor, former ORS 79.1100, which likewise had a "reasonable identification" requirement, this Court has held that a description of crop land "need only recite enough information to enable third parties to locate, upon reasonable inquiry, the land where the collateral is growing." <u>Willamette Production Credit Assoc. v. Lovelady (In re Lovelady)</u>, 21 B.R. 182, 184 (Bankr. D. Or. 1982).[8] It further held the "reasonable inquiry" test as to crop land was consistent with the same test developed for other types of collateral. <u>Id</u>. at 184. <u>Accord</u> <u>Appleway Leasing, Inc. v. Wilken</u>, 39 Or. App. 43, 47, 591 P.2d 382, 384 (1979) (construing former ORS 79.1100, and holding description of borrower's lone tractor in financing statement that recited correct model but incorrect serial

---

[8] The necessity to describe crop land to create or perfect a security interest in crops has since been eliminated.

MEMORANDUM OPINION-10

number nonetheless was sufficient to put third party on inquiry). Courts in other jurisdictions construing both the current and former statutes concur. See, e.g., Rice v. Miller, 21 Misc. 3d 573, 577, 864 N.Y.S.2d 255, 258 (2008) (applying New York law, UCC 9-108(b)(6)'s standard is met "if a third party could determine what items of the debtor's collateral are subject to the creditor's security interest" (internal quotation omitted)); Nolden v. Plant Reclamation (In re Amex-Protein Development Corp.), 504 F.2d 1056, 1060 (9th Cir. 1974) (applying California law, "[t]he description in the security agreement is sufficient [for purposes of UCC 9-110]. . . if it provides such information as would lead a reasonable inquirer to the identity of the collateral"). The Nolden court further clarified that: 1) "[i]t is enough if the description allows a third party, aided by information which the security agreement suggests, to identify the property" Id. at 1061; and 2) "[t]here is no requirement that the description of the collateral be complete within the four corners of the security agreement or other single document." Id. at 1060.

Sufficiency of collateral descriptions in financing statements:

Under ORS 79.0502(1)(c), a financing statement must "indicate" the collateral it covers. Under ORS 79.0504(1), a financing statement sufficiently indicates the collateral if it meets the above ORS 79.0108 standards.

Harvest:

### Harvest Security Agreement

At the outset, it is important to note Plaintiffs do not argue they did not intend to grant Harvest a security interest in Christmas trees. Rather they rely solely on their theory that the Harvest Security Agreement is a defective writing. The Harvest Security Agreement provides in relevant part:

> To secure payment of the Indebtedness and performance of all obligations of Mortgagor under this Mortgage, Mortgagor mortgages and conveys to Lender the following:
>
> (1) The real property in Marion County, Oregon described on attached Exhibit A (the 'Real Property');[9]
>
> . . .

---

[9] The "Real Property" consists of the entire farm.

MEMORANDUM OPINION-11

> (4) All trees, bushes, vines and other permanent plantings now
> or hereafter located on the real property (the "Plantings");
>
> (5) All intellectual property rights now or hereafter held by
> Mortgagor with respect to Plantings now or hereafter growing
> on the Real Property, including, without limitation, the SILVER
> BELLS BLUE™ NOBLE FIR trademark and other labels,
> logos, patents or patent licenses and trademark rights (the
> "Intellectual Property Rights"); and
>
> (6) All of Mortgagor's right, title and interest in all leases of or
> pertaining to the Real Property whether as landlord or tenant
> (the "Leases").
>
> . . .
>
> Mortgagor grants Lender a security interest in the . . . Plantings,
> . . . the Intellectual Property Rights and the Leases.

Harvest invokes the "doctrine of the last antecedent" (the DOTLA) to argue "permanent" in § 4 modifies only "vines," and not "bushes" or "trees," and thus because a Christmas tree is a "tree," a description naming "all trees" is sufficient for ORS 79.0108 purposes.

Under the DOTLA:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.
>
> Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.

State v. Webb, 324 Or. 380, 386, 927 P.2d 79, 82 (1996) (internal quotation omitted). Although usually applied to statutes, the DOTLA has been applied to contracts as well. Milne v. Milne Constr. Co., 207 Or. App. 382, 387, n.3, 142 P.3d 475, 477 (2006). However, the DOTLA is "only a textual aid, and its application yields to more persuasive contextual evidence of the . . . [parties'] intent . . . ." Bridgeview Vineyards, Inc. v. State Land Bd., 211 Or. App. 251, 270, 154 P.3d 734, 744 (2007).

// // //

// // //

MEMORANDUM OPINION-12

Applying the DOTLA combines "vines and other permanent plantings" into one item in a series. Viewing the context, other sections in the grant paragraph could be construed as doing the same thing.[10] Further, although the debate rages, omitting the serial (aka "Harvard" or "Oxford") comma before the conjunction joining the last item in a series has been accepted by highly credible style sources.[11] On the other hand, applying the DOTLA leaves § 4 without a coordinating conjunction. This equates to the grant of a security interest in "all apples, peaches, oranges," instead of "all apples [trees], peaches [bushes], and oranges [vines and other permanent plantings]. All of the other clauses in the "grant" provisions, however, have such a conjunction (albeit some with a preceding comma). See Exhibit 1 to Walker Declaration in Support of Plaintiffs' Motion for Summary Judgment. These competing contextual clues leave unresolved whether the DOTLA should apply and thus whether "permanent" modifies "trees" and "bushes" as well as "vines." Such ambiguity alone would cause a reasonable third party to inquire further. However, even assuming arguendo that a reasonable third party would conclude that the DOTLA does not apply and thus "permanent" modifies "trees" in § 4, contrary to Plaintiffs' argument below, that does not end the Court's inquiry.

Plaintiffs' main argument is that "permanent trees" necessarily exclude Christmas trees because, as discussed above, Christmas trees are "crops" under the UCC, Rainier Nat'l Bank, 59 Wash App. at 164, 796 P.2d at 445, and "crops" by definition are not "permanent." Plaintiffs misread Rainier's scope. There, after determining Christmas trees were "crops," the court examined whether the term "inventory" in a competing bank's financing statement properly perfected a security interest in Christmas trees. The court held that,

---

[10] Section 2 grants a security interest in "[a]ll furnishings, fixtures (including trade fixtures), supplies, equipment_ and inventory used for the production of water on the Real property or for the irrigation or drainage thereof . . . ." Section 3 grants a security interest in "[a]ll water, water rights, ditches and ditch rights, any permits, licenses, certificates_ or shares of stock evidencing any such water right or ditch rights . . . ." (missing commas indicated by "_").

[11] Compare *AP Stylebook,* p. 373 (Darrell Christian, Sally Jacobsen and David Minthorn eds., 46th ed. Basic Books 2011) (comma should be omitted), with *The Chicago Manual of Style*, ¶ 6.18 (16th ed. University of Chicago Press 2010) (comma should be inserted), and Bryan Garner, *The Elements of Legal Style*, § 2.1, 15-16, (2d ed. Oxford University Press 2002) (always use a serial comma).

MEMORANDUM OPINION-13

because by UCC definition the term "inventory" necessarily excluded "crops," the bank's security interest was unperfected and thus subordinate. Here, Harvest does not pin its hopes on the word "inventory," but instead relies on the above-quoted language, which in no way connects "crops" or "trees" with "inventory" or for that matter any other UCC-defined term. Therefore, even if the Court were to follow Rainier, it is not dispositive. The meaning of the "permanent trees" description must still be considered.

Security agreements are construed like any other contract. Community Bank, 278 Or. at 659, 566 P.2d at 478. The Court must consider disputed language in the context of the contract as a whole. Williams v. RJ Reynolds Tobacco Co., 351 Or. 368, 379, 271 P.3d 103, 109 (2011). Section 4 includes "permanent" trees as part of a defined term: "the Plantings." Use of the word "Plantings" to define the group of plants which are collateral itself connotes something planted as opposed to growing naturally. A "planting" is defined as: "an area where plants are grown for commercial or decorative purposes; *also*: the plants grown in such an area." Merriam-Webster Online; www.merriam-webster.com (as searched July 12, 2012). Here, a reasonable third party would know the only (or at least the vast majority of) crops Plaintiffs plant are Christmas trees.[12] Further, as Harvest argues, the phrase "permanent crops" is commonly used in many statutory schemes, typically to distinguish them from "annual" crops. See, e.g., West's Ann. Cal. Water Code § 35454 (distinguishing "permanent crops" from "annual crops" for purposes of water use); 40 CFR § 158.1410(e)(7) (noting "various tree crops and vines" as examples of "permanent food crops" and asparagus and pineapples as examples of "semi-permanent food crops" for purposes of pesticide residue testing requirements); Wash. Rev. Code § 52.26.180(4)(b) (excluding "permanent growing crops" from the definition of "improvements to real property" for purposes of a regional fire protection service authority's assessment of benefit charges on such improvements); Ariz. Rev. Stat. Ann. § 42-12151(2) (defining "agricultural real property" for property tax purposes as among other things "[a]n aggregate ten or more gross acres of permanent crops"); 43 USC § 1600e(e)(9) (making Federal expenditures or financial assistance available in the Colorado River Floodway for "compatible agricultural uses that do not involve

---

[12]Evidence adduced at hearings in Plaintiffs' main Chapter 11 case indicates upwards of 1,000,000 trees grow on Plaintiffs' farm.

MEMORANDUM OPINION-14

permanent crops"). This use belies Plaintiffs' contention that "permanent" and "crops" are mutually exclusive.

Finally, and most importantly, any reasonable person's doubt as to what "all permanent trees" means in § 4 would be resolved by § 5. That section grants a security interest in all intellectual property . . ."<u>with respect to Plantings</u>" and includes the SILVER BELLS BLUE™ NOBLE FIR trademark. (emphasis added). Plaintiffs concede this is the mark for their Christmas trees. It is part of the intellectual property "with respect to Plantings." "With respect to" means "with reference to: in relation to." Merriam-Webster Online; www.merriam-webster.com (as searched July 12, 2012). Therefore, if a trademark on Christmas trees "relates to" or "refers to" "Plantings," then "Plantings" by necessity includes Christmas trees.

Even assuming §§ 4 and 5 were construed as leaving some doubt, they contain at least such information as would lead a reasonable inquirer to identify Christmas trees as collateral. Again, context is key. Plaintiffs in essence argue § 4 would cause a third party to stop dead in its tracks upon reading the collateral is "permanent" trees. However, that third party would know Harvest loaned money to borrowers with approximately 1,000,000 Christmas trees on their property, and whose primary, if not sole, source of income to repay the loan was generated by those trees. In that context, language which in essence takes those trees and their proceeds off the table as a source to satisfy a $7,000,000 loan would need to be crystal clear to stop further inquiry. No such crystal clear exclusionary language exists. Finally, any lingering doubt would be dispelled upon a reasonable inquirer's examination of Note B, which the Harvest Security Agreement references, and which specifically references Christmas trees as "collateral."[13]

---

[13] Exhibit A to Note B provides in relevant part:

> (j) Borrower shall provide Lender by March 1 of each year with a certified tree inventory (the "Certificate of Inventory") which will include a current Christmas tree count for all land described in the Mortgage, categorized by land tract, year planted and tree size. The Certification of Inventory shall also include a two-year projected harvest and planting schedule identifying number of trees, variety and location. Borrower shall certify that the Certificate of Inventory as being true, correct and complete to Borrower's best knowledge.
>
> (continued...)

MEMORANDUM OPINION-15

<u>Harvest Financing Statements</u>:

The description in the Harvest Financing Statements identifies the collateral in relevant part as:

> 3. All trees, bushes, vines and other permanent plantings now or hereafter located on the Land.
>
> 4. All intellectual property rights of Debtor with respect to Christmas trees, vines or other permanent plantings now or hereafter growing on the Land, including, without limitation, the SILVER BELLS BLUE™ NOBLE FIR trademark and all patents, trademarks and patent licenses and trademark rights.

Although this description does not precisely match the one in the Harvest Security Agreement, the differences in fact further clarify that Christmas trees are part of Harvest's security. Again, the word "plantings" (although not a capitalized defined term) is used. Further, and more compelling, even using Plaintiffs' anti-DOTLA construction, § 4 would specifically include "Christmas trees" as a subset of "permanent plantings." For these reasons and those stated with regard to the Harvest Security Agreement, the Harvest Financing Statements meet ORS 79.0108(2)'s requirement, and thus by definition ORS 79.0504's standard of reasonable identification.

<u>Demeter</u>:

<u>Demeter Security Agreement</u>:

Section 4 of the collateral description in the Demeter Security Agreement specifically references "[a]ll Christmas trees" as part of the collateral. It thus clearly meets ORS 79.0108(2)'s standard.

<u>Demeter Financing Statement</u>:

The Demeter Financing Statement has the exact same language as the Harvest Financing Statements, and for the same reasons it sufficiently "indicates the collateral." As such, Demeter has a perfected security interest in the Christmas trees to secure payment of the Demeter Note.

---

[13](...continued)
> (k) Borrower shall provide Lender complete access to the property encumbered by the Mortgage within reasonable time after request for such access in order to permit Lender to verify the information contained in the Certification of Inventory or otherwise to confirm <u>the collateral value of the Christmas trees</u> (the "Tree Collateral Value") and the total collateral value of all property encumbered by the Mortgage (the "Total Collateral Value"). (emphasis added).

MEMORANDUM OPINION-16

<u>Livingston and Blanket Mortgages</u>:

While § 4 of the "grant" paragraph in the Livingston Mortgage specifically references "[a]ll Christmas trees" as collateral, it is uncontradicted that at no relevant time have Christmas trees grown on the North Livingston parcel. It is further uncontradicted that the Blanket Mortgage does not reference "trees," "Christmas trees," "crops," or any similar personal property verbiage. Because of these infirmities, Demeter conceded at oral argument it was not claiming either of these mortgages cover the Christmas trees.

**Proceeds**:

Harvest and Demeter's perfected security interests also extend to identifiable proceeds of the Christmas trees. ORS 79.0315(1)(b)(security interest attaches to any identifiable proceeds); ORS 79.0315(3)(security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected); ORS 79.0315(4)(b)(no lapse in perfection as to identifiable cash proceeds).[14] See also 11 U.S.C. § 552(b)(1) extending pre-petition security interests in proceeds post-petition, unless the court orders otherwise.

**Conclusion**:

The Court concludes as a matter of law that the description in the Harvest and Demeter Security Agreements reasonably identifies Christmas trees as collateral.[15] Thus, Notes A and B, as well as the

---

[14] "Cash proceeds" encompass the money derived from sale of the trees. ORS 79.0102(1)(kkk)(A) ("proceeds" are "[w]hatever is acquired upon the sale . . . or other disposition of collateral"), (i)("[c]ash proceeds are proceeds that are money, checks, deposit accounts or the like"). [Although not relevant here, it is probable the term "the like" in ORS 79.0102(1)(i) refers to "money" and "checks" as well as "deposit accounts," yet no serial comma is used. See Official Comment 13(e) to UCC 9-102 ("the phrase 'and the like' covers property that is functionally equivalent to 'money, checks, or deposit accounts' . . ." ].

[15] It appears the majority rule is that the sufficiency of the collateral's description is a question of law. Compare Avlin Inc. v. Manis, 124 N.M. 544, 545, 953 P.2d 309, 310 (Ct. App. 1997) (question of law, applying New Mexico law), and Bank of Cumming v. Chapman, 245 Ga. 261, 264 S.E.2d 201 (1980) (same, applying Georgia law), with Dresser Industries, Inc. v. Dixie Fuels, Inc. (In re Dixie Fuels, Inc.), 48 B.R. 514, 516 (Bankr. N.D. Ala. 1985) (question of fact, applying Alabama law). Even if "sufficiency" is a question of fact, as noted above, all parties have conceded no material factual dispute exists and the Court may render judgment based solely on the documentary evidence adduced. Even were that not the case, (and
(continued...)

MEMORANDUM OPINION-17

Demeter Note are secured by properly perfected unavoidable security interests in Plaintiffs' Christmas trees and the proceeds thereof.[16] Under FRCP 54(b) (made applicable by FRBP 7054(a)), the Court finds no just reason for delay in entering judgment. Harvest's counsel is to prepare one order denying Plaintiff's motion for summary judgment and granting both cross motions for summary judgment, and one judgment covering both Harvest and Demeter, consistent with the above. Entitlement to attorney's fees and costs shall be determined in supplemental proceedings consistent with LBRs 7054-1 and 9021-1(c). The above constitute the Court's findings of fact and conclusions of law under FRCP 52(a), made applicable to this proceeding under FRBP 7052. They shall not be separately stated.

*Thomas M. Renn* (signature)

THOMAS M. RENN
Bankruptcy Judge

---

[15](...continued)
"سufficiency" was a question of fact), the Court concludes, giving Plaintiffs all reasonable inferences, that there is no genuine dispute as to whether the descriptions are sufficient (that is, no reasonable jury could find for Plaintiffs on the evidence adduced on summary judgment).

[16] As Demeter noted at oral argument, because it is junior to Harvest and because Harvest is undersecured based on the Court's prior valuation of its collateral, Demeter's interest in the Christmas trees may have no value, particularly if a "cram down" plan is eventually confirmed.

MEMORANDUM OPINION-18